STATE v. CARRIE MAE RICHARDSON.

(Filed 29 April, 1942.)

**Homicide § 29—Sentence for involuntary manslaughter is not limited to two years imprisonment.**

The provision of C. S., 4201, as amended by ch. 249, Public Laws 1933, that the punishment for involuntary manslaughter shall be in the discretion of the court and that the defendant may be fined or imprisoned, or both, prescribes a "specific punishment," and therefore C. S., 4172, which limits the sentence for a felony for which no specific punishment is prescribed by statute, to two years imprisonment is not applicable, and a sentence of imprisonment in the State Prison for a term of seven years upon defendant's plea of guilty of involuntary manslaughter will be upheld, the punishment being in the sound discretion of the trial court, limited only by the prohibition against cruel and unusual punishment. Constitution of North Carolina, Art. I, sec. 14.

APPEAL by defendant from *Thompson, J.,* at October Term, 1941, of FRANKLIN.

Criminal prosecution upon an indictment charging the defendant with the felonious slaying of one Gladys Ruffin. The defendant, through her attorneys, tendered a plea of guilty of involuntary manslaughter, which plea was accepted by the State.

Judgment: Imprisonment in the State Prison for a term of seven years. The defendant appeals and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*Yarborough & Yarborough for defendant.*

DENNY, J. The only exception is to the judgment of the court. The defendant contends that upon a plea of guilty of involuntary manslaughter, which plea was accepted by the State, the court was without authority to impose any judgment in excess of two years imprisonment in the State Prison, the offense of involuntary manslaughter not being an infamous crime, therefore the sentence of imprisonment for seven years in the State Prison is unlawful.

Is a provision in a criminal statute "that the punishment shall be in the discretion of the Court and the defendant may be fined or imprisoned or both," the prescribing of a "specific punishment" within the meaning of section 4172 of the Consolidated Statutes of North Carolina? The answer is in the affirmative. *S. v. Rippy,* 127 N. C., 516, 37 S. E., 148; *S. v. Swindell,* 189 N. C., 151, 126 S. E., 417.

In the case of *S. v. Dunn,* 208 N. C., 333, 180 S. E., 708, this Court passed upon the proviso added to C. S., 4201, of North Carolina, by chapter 249, Public Laws of 1933. In answer to the question: "Is the crime of involuntary manslaughter, as contained in the proviso of C. S., 4201, of the 1933 supplement to the North Carolina Code of 1931, a misdemeanor or a felony," *Justice Brogden* said: "The second question of law involves the amendment to C. S., 4201, of the Code of 1931. Said section, before the enactment of chapter 249 of the Laws of 1933, read as follows: 'If any person shall commit the crime of manslaughter he shall be punished by imprisonment in the county jail or State Prison for not less than four months nor more than twenty years.' Thereafter, on 10 April, 1933, the General Assembly enacted chapter 249, Public Laws of 1933, in the following words: 'Section 1. That section 4201 of Consolidated Statutes be and the same is hereby amended by adding a sentence to said section as follows: *"Provided, however,* that in cases of involuntary manslaughter, punishment shall be in the discretion of the court, and the defendant may be fined or imprisoned, or both." ' The defendant contends that the proviso added by the Legislature was designed to make involuntary manslaughter a misdemeanor instead of a felony, and that, therefore, the recorder's court of Richmond County had jurisdiction, and hence no indictment could lie in the Superior Court. This contention, however, cannot be maintained for two reasons: First, it does not appear from the record that there is any recorder's court in Richmond County, or that such court had exclusive jurisdiction of misdemeanors. Second, the proviso did not purport to create a new crime, to wit, that of involuntary manslaughter. Chapter 249 states in plain English that it is designed as an amendment to C. S., 4201. Discussing the function of a proviso in *Supply Co. v. Eastern Star Home,* 163 N. C., 513, 79 S. E., 964, the Court declared: 'It has long been held that if a proviso in a statute be directly contrary to the purview of the statute, the proviso is good and not the purview, because the proviso speaks the later intention of the Legislature.' It is not thought that by enacting the proviso the Legislature intended to repeal the manslaughter statute and to set up in its stead involuntary manslaughter as a misdemeanor. Indeed, the Court is of opinion, and so holds, that the proviso was intended and designed to mitigate the punishment in cases of involuntary manslaughter, and to commit such punishment to the sound discretion of the trial judge."

We hold that the court below had the authority to impose the sentence entered pursuant to sec. 4201 of the Consolidated Statutes of North Carolina, as amended by chapter 249, Public Laws of 1933, and that under the provisions of this statute the question of punishment is left to the sound discretion of the court, limited only by the prohibition against cruel or unusual punishment in our Constitution, Art. I, sec. 14. *S. v. Swindell, supra.*

The judgment of the court below is

Affirmed.